In re VOGE, INC., Debtor.

Mark J. SCHLANT, Trustee in Bankruptcy for Voge, Inc., Plaintiff,

v.

NIAGARA MOHAWK POWER CORPORATION, Defendant.

Bankruptcy No. 95–14337 K.
Adversary No. 97–1093 K.

United States Bankruptcy Court, W.D. New York.

June 18, 1998.

MICHAEL J. KAPLAN, Bankruptcy Judge.

Further argument and conferences since the rendering of this Court's decision dated February 9, 1998, convinces this writer that an odd, but informative, set of circumstances requires an important refinement to the holding of that earlier decision, or else it might be misleading.

Two specific complexities of the stipulated facts escaped this Court's notice. Firstly, this writer believed that after the breach of the first DPA, the Debtor was required to pay for current usage on a present basis, and that payments under the second and third DPA's were payments that reduced the Debtor's balance as of the time of the breach of the first DPA. Analogized to a more typical setting, the Court believed the second DPA to be similar to an open account on which a seller of raw materials says "Send me $10,000 on your past-due account, and I will deliver to you $5,000 in new goods on credit." But what was really happening in the case at Bar was that the Utility was figuratively saying (unintentionally, one presumes) "send us $10,000 on your past due account and we will deliver to you new services, on credit, that could end up far exceeding that amount."

Secondly, there was only one payment within the preference period, and it was made in response to a specific bill that was arguably an offer of yet a fourth DPA. It

sought a $11,815 preferential payment of long overdue charges to bring the third DPA obligations (but not the account charges) current,[1] plus payment of current usage ($1265). And only $2200 in unpaid new services were extended after that payment was made. The bill further required that a $21,575 payment be made by a specified date approximately a month later; that was never paid.

■ In sum, then, this writer thought that the fact that the debt owed to the utility grew by an amount in excess of the preferential payment, was attributable to post-preference "new value." In fact, new services were extended as a consequence of the Debtor's repeated, but unfulfilled *promises* to make payments, until the Debtor finally (after breach of the third DPA) made the challenged payment as what might well be described as a "down payment" on yet a fourth DPA. All but $2200 of the new value bestowed was prior to, not after, the preferential payment, and does not constitute a "new value" defense.

In light of these facts, the emphasis in the earlier decision on the date that state law permitted discontinuance of service, was misleading even though it was qualified by the admonition that § 547 "only deals with amounts already paid, and that statute can never cause a utility to 'lose' by electing to continue service *as long as it receives payment for the ongoing services.*" and "a utility may lose if it continues service without some payment on account." *Id.*

■ Under 11 U.S.C. § 547(c)(1), the emphasis must always remain on "new value" extended after the preferential payment. The utility is injured here not by § 547, but by its failure to do what other suppliers do, which is to put the customer on a C.O.D. basis or some other terms that do not constitute an extension of ever-larger amounts of credit.

Because the utility claims to have preserved a right to prove up a § 547(c)(2) defense in the event of such a ruling, and the Trustee disputes that such a right was pre-

served, this matter is restored to the calendar for further argument on July 14, 1998 at 9:00 a.m.

SO ORDERED.

---

1. This figure represents $8,135 in *arrears* under the third DPA plus $3,680 which was the *current* payment under the third DPA.